Dear Mr. Theriot:
Our office is in receipt of an opinion request in which you ask our office to address several questions concerning La.R.S. 6:319, which provides, in its entirety, that:
 Notwithstanding any other law to the contrary, including, but not limited to R.S. 33:2955 and R.S. 49:327, any bank, savings bank or savings and loan association, domiciled or having a branch in Louisiana, that receives public funds deposits may utilize, and public bodies may accept, any recognized system or program to provide FDIC insurance coverage and such funds shall be deemed and considered fully collateralized, provided that the recognized system or program satisfies the FDIC's requirements for agency pass-through deposit insurance coverage. The total dollar amount of state funds received pursuant to the provisions of this Section by a bank, savings bank, or savings and loan association, domiciled or having a branch in Louisiana, must be maintained by that financial institution. [Emphasis added.]
You first ask whether La.R.S. 6:319, relative to banking law, controls public finance. Considering the highlighted language at the outset of La.R.S. 6:319 above, it is the opinion of this office that, in the event of a conflict between La.R.S. 6:319 and another statute, La.R.S. 6:319 would generally control.
Next, you ask several questions regarding the Certificate of Deposit Account Registry Service (CDARS), which is run by a financial intermediary company known as the Promontory Interfinancial Network, LLC ("Promontory"). As we explained in Atty. Gen. Op. No. 04-0252, CDARS enables a participating bank to offer its investors the opportunity to invest funds in a number of certificates of deposit (CDs) at multiple institutions throughout the country, each in increments of less than the standard FDIC insurance maximum in order to ensure that both principal and interest are eligible for full FDIC insurance. This permits the full amount invested to be eligible for FDIC insurance, even though the investor is only required to make arrangements for the certificates through one bank. *Page 2 
The following hypothetical example illustrates how the CDARS program works.[1] Assume a public body has $10,000,000 that it wishes to invest in CDs and has expressed an interest in participating in the CDARS program through its local bank, Bank A. Bank A then provides the public body with a list of participating institutions in which a portion of the original deposit will be deposited. The list will likely include insured institutions that do not have their principal or branch offices in Louisiana.
Bank A issues the public body a CD worth $95,000, leaving room for interest, and sends the remaining $9,905,000 to Promontory, which arranges for 105 other banks to issue the depositor a CD in amounts less than $100,000.
If the public body elects to participate in a CDARS Reciprocal Transaction, those 105 other banks will each, in return, buy CDs in the same amounts for its customers from Bank A.[2] Thus, Promontory acts as a clearinghouse by matching deposits from one institution with another so that an amount corresponding to the funds a bank places with other institutions through the CDARS program is invested in that bank by other institutions and, therefore, remains available for community lending purposes.
Alternatively, the public body could elect to participate in a CDARS One-Way Transaction.[3] In that case, Bank A would not receive funds from the 105 other banks. Rather, the public body would pay a fee to Bank A and Promontory.[4]
In your request, you ask the following questions regarding CDARS:
 1. May public bodies utilize CDARS under La.R.S. 6:319?
 2. Does the enactment of La.R.S. 6:319 change your finding in Atty. Gen. Op. Nos. 04-0252 and/or 83-9?
 3. Does the last sentence of La.R.S. 6:319
require that the total dollar amount of public funds deposited must remain in the domiciliary bank or only that the domiciliary bank must simply "maintain" records of the transactions as provided by CDARS?
First, you ask whether public bodies may utilize CDARS under La.R.S. 6:319. In 2004, prior to the enactment of La.R.S. 6:319, we opined that political subdivisions could not avail themselves of the benefits of CDARS in light of La.R.S. 33:2955(A)(1)(iii), which allows political subdivisions to invest monies in "time certificates of deposit of any bank domiciled or having a branch office in the state of Louisiana." Atty. Gen. Op. No. 04-0252. *Page 3 
Our opinion was based upon the fact that CDARS does not limit its investments to banks domiciled or having a branch in this state.
In light of the enactment of La.R.S. 6:319 and its specification that its provisions apply notwithstanding any other law to the contrary, it is the opinion of this office that public bodies may utilize any recognized system or program to provide FDIC insurance coverage, including CDARS, as long as such system or program satisfies the FDIC's requirements for agency pass-through deposit insurance coverage. Atty. Gen. Op. No. 04-0252 is hereby recalled and set aside in its entirety.
Next, you ask whether La.R.S. 6:319 affects Atty. Gen. Op. No. 83-9, in which we opined that La.R.S. 39:1242 and 33:2929 requires fiscal agent banks for cities with a population exceeding 150,000 to maintain, as security, the total amount on deposit with such bank. Considering the "notwithstanding any other law to the contrary. . ." language contained at the outset of La.R.S. 6:319, it is the opinion of this office that a public body that falls under La.R.S. 39:1242 and 33:2929 would not have to require its agent bank to maintain the total amount on deposit with such bank as security, assuming that it utilized a recognized system or program that met the requirements of La.R.S. 6:319. To the extent Atty. Gen. Op. No. 83-9 conflicts with our assessment, it is hereby recalled and set aside.
Finally, you ask whether the last sentence of La.R.S. 6:319, above, requires that the total dollar amount of public funds deposited must remain in the domiciliary bank or only that the domiciliary bank must simply "maintain" records of the transactions as provided by CDARS.
We interpret the last sentence of La.R.S. 6:319 to require that, with regard to state funds only[5], the total dollar amount of public funds deposited pursuant to that statute must remain in the financial institution domiciled or having a branch in Louisiana. As applied to CDARS, this means that public bodies depositing statefunds for investment in CDs would be required to participate in a CDARS Reciprocal Transaction rather than a CDARS One-Way Transaction. [Emphasis added.] That way, the financial institution domiciled or having a branch in Louisiana would be required to receive an equal amount of funds from other banks in the network.
Next, you ask several questions concern the Temporary Liquidity Guarantee Program (TLGP), which you indicated was created by the FDIC as a part of the overall "bailout" program enacted by Congress. According to your request, the TLGP is a temporary measure to promote financial stability by preserving confidence in the banking system and encouraging liquidity. The program consists of the following two separate components: *Page 4 
 (1) The Transaction Account Guarantee Program (TAGP), by which the FDIC will guarantee certain non-interest-bearing transaction accounts; and
 (2) The Debt Guarantee Program, by which the FDIC will guarantee the payment of certain newly-issued senior unsecured debt.
Specifically, you asked the following questions:
 1. Does the TLGP meet the requirements of La.R.S. 6:319?
 2. May public entities invest public funds in debt instruments issued by private lending institutions under the Debt Guarantee Program, even though such debt instruments are not specifically listed in La.R.S. 33:2955 and La.R.S. 49:327?
You further indicated that federal rules state at 12 C.F.R. 370 that the TLGP is guaranteed by the FDIC and backed by the full faith and credit of the United States. Under the TLGP, TAGP provides FDIC insurance coverage for all funds in a non-interest-bearing transaction deposit account, defined as a transaction account on which interest is neither accrued nor paid and on which the insured depository institution does not reserve the right to require advance notice of an intended withdrawal.
You indicated that lending institutions are currently providing notice to public entities that they would like to release collateral pursuant to TLGP. Thus, you ask whether TLGP actually meets the requirements of La.R.S. 6:319.
As we concluded above with regards to CDARS, under La.R.S. 6:319, public bodies may utilize any recognized system or program to provide FDIC insurance coverage, including CDARS, as long as suchsystem or program satisfies the FDIC's requirements for agencypass-through deposit insurance coverage. [Emphasis added.] Because the TLGP, via the TAGP, provides FDIC insurance coverage for all funds in non-interest-bearing transaction deposit accounts, it could not satisfy the FDIC's requirements for agency pass-through deposit insurance coverage. Nor would it need to, because the entire amount on deposit in a non-interest-bearing transaction deposit account would be fully insured. Thus, there would be no need to spread deposits among multiple institutions.
Considering the foregoing, we believe that the TAGP does not meet the requirements of La.R.S. 6:319. Accordingly, banks may not rely on the TAGP to release collateral otherwise required by law.
Finally, you ask whether public entities may invest public funds in debt instruments issued by private lending institutions under the Debt Guarantee Program, even though *Page 5 
such debt instruments are not specifically listed in La.R.S.33:2955 and La.R.S. 49:327.
La.R.S. 33:2955 governs investments by political subdivisions. La.R.S. 33:2955(A)(1)(b) provides, in pertinent part, that political subdivisions may invest in "[b]onds, debentures, notes, or other evidence of indebtedness issued or guaranteed by federalagencies and provided such obligations are backed by the full faithand credit of the United States of America . . ." [Emphasis added.]
Similiarly, La.R.S. 49:327(B) governs investments by the state treasurer with regards to funds on deposit in the state treasury. La.R.S. 49:327(B)(1)(a) provides, in pertinent part, that the state treasurer may invest in "[d]irect obligations of the United States government, a United States government agency, a United States government instrumentality, or a United Statesgovernment-sponsored enterprise, the principal and interest of whichare fully and explicitly guaranteed by the full faith and credit ofthe government of the United States of America, and contained in alist promulgated by the state treasurer in accordance with theAdministrative Procedure Act." [Emphasis added.]
You indicated in your letter that the TLGP Debt Guarantee Program provides that the debt is guaranteed by the FDIC and backed by the full faith and credit of the United States of America. As such, it is the opinion of this office that it would permissible for political subdivisions to invest public funds in debt instruments issued by private lending institutions under the Debt Guarantee Program.
With regard to state investments, we believe that the debt instruments under TLGP Debt Guarantee Program would be considered a direct obligation of a "United States government-sponsored enterprise" within the meaning of La.R.S. 49:327(B)(1)(a). Thus, the state treasurer may invest public funds in such debt instruments provided that same are contained in a list promulgated by the state treasurer in accordance with the Administrative Procedure Act.
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 Attorney General
 BY: __________________________
 BENJAMIN A. HUXEN II
 Assistant Attorney General
 JDC/BAH II
[1] Our example is based upon a similar example contained in Mich. Atty. Gen. Op. No. 7204.
[2] Seehttp://www.geobanking.com/pdfs/CDARSAgreement.pdf, CDARS Deposit Placement Agreement, at, at p. 2.
[3] Id.
[4] Id.
[5] The reason for the distinction between state and public funds is that, while the first sentence of La.R.S. 6:319 expressly applies to "public funds," the last sentence of that statute expressly applies only to "state funds."